IN RE DISQUALIFICATION OF SQUIRE.

CAMBURN *v.* CAMBURN. (TWO CASES.)

[Cite as *In re Disqualification of Squire,*
110 Ohio St.3d 1202, 2005-Ohio-7157.]

(No. 05–AP–011—Decided April 7, 2005.) ·

MOYER, C.J.

{¶ 1} Attorney Susan M. Lantz and her client Gregory S. Camburn have filed affidavits with the clerk of this court under R.C. 2701.03 seeking the disqualification of Judge Carole Squire from acting on any further proceedings in case Nos. 05DV–01–051 and 05DR–01–124 in the Court of Common Pleas of Franklin County, Domestic Relations Division. Lantz also asks that Judge Squire be disqualified from any cases in which Lantz is now serving as counsel of record.

{¶ 2} First, the timeliness of the affidavit merits discussion. R.C. 2701.03(B) requires that an affidavit of disqualification be filed "not less than seven calendar days before the day on which the next hearing" in the case is scheduled. Compliance with that deadline can be excused only when the affiant has demonstrated that the affidavit "could not have been filed on time." *In re Disqualification of Badger* (1989), 43 Ohio St.3d 601, 538 N.E.2d 1023.

{¶ 3} The affidavits in this case were filed with the clerk of this court on February 7, 2005. The next scheduled hearing before Judge Squire was then set for February 10, 2005. Though the affidavits were filed less than seven days before the next hearing, Lantz explains that several of the events giving rise to the allegations in the affidavits occurred just three or four days before the affidavits were filed. Also, Judge Squire did not schedule the February 10, 2005 hearing until February 4, 2005. In light of these facts, I conclude that the clerk properly accepted the affidavits for filing despite the seven-day requirement in R.C. 2701.03(B).

{¶ 4} The two affiants describe a series of unpleasant courtroom encounters between attorney Lantz and Judge Squire. According to Lantz, the judge has repeatedly shown an unwillingness to listen to Lantz's arguments, has demanded additional information before issuing emergency orders but then has not made herself available once the information was gathered, has shown a general lack of patience and courtesy, has refused to allow a court reporter to keep an official record of proceedings in the courtroom, and has allowed her bailiff to treat Lantz in a discourteous and dismissive way. The judge has shown several flashes of anger toward Lantz in the courtroom, the affidavits explain, and has held Lantz in contempt for allegedly ignoring instructions given to her by the bailiff and for failing to bring the parties' children to the courthouse even though any instructions or orders on those matters were not journalized or recorded. The judge,

according to the affidavits, also directed Lantz's client to secure new counsel within 35 minutes, but refused to allow discussion about that ruling on the record.

{¶ 5} Judge Squire has responded to the affidavits in writing, and has offered several affidavits of her own as well. The judge contends that she has acted at all times in the best interests of the parties' children, and states that she holds no ill will or bias against any of the parties or their lawyers. Supporting statements from the parents of party Maria Camburn and her daughter allege that attorney Lantz interrupted the judge, argued with her, and behaved rudely in the courtroom. The judge's bailiff has also supplied an affidavit in which she states that attorney Lantz ignored her instructions and was rude and disruptive before the judge herself.

{¶ 6} In a case such as this, where persons who saw the same events disagree so sharply about what happened, I cannot hope to sort out all of their factual disputes, let alone resolve the lingering mistrust that some or all of them may now feel. What I can and must do in a case like this, however, is determine whether the judge in question can fairly and impartially preside over future proceedings, despite the disagreement that occurred between the judge and an attorney for one of the parties.

{¶ 7} In the end, I conclude that disqualification of the judge is appropriate in this case to ensure the parties and the public that the underlying legal issues before the trial court will be resolved dispassionately and fairly and to make certain that the outcome of the case will not be affected by the sharp differences that have divided and continue to divide the judge and attorney Lantz.

{¶ 8} A judge, "notwithstanding the conduct of litigants or counsel, has an ethical obligation to conduct himself or herself in a courteous and dignified manner that does not convey the appearance of bias or prejudice toward litigants or their attorneys." *In re Disqualification of Cleary* (2000), 88 Ohio St.3d 1220, 1222–1223, 723 N.E.2d 1106. See, also, Canon 3(B)(4) of the Code of Judicial Conduct (directing judges to be "patient, dignified, and courteous" to parties and their lawyers, even in the most difficult of circumstances). A judge must not let his or her views about or frustrations with an attorney so infect the case that a disinterested observer might reasonably question the judge's ability to evaluate fairly and objectively both the attorney's future work and the parties' legal interests.

{¶ 9} The information presented to me in the various affidavits suggests that Judge Squire was quick to anger in the courtroom and exchanged sharp words with attorney Lantz on multiple days. The judge moved with considerable speed to hold Lantz in contempt and resisted Lantz's requests to create a complete stenographic record of the full series of events that occurred in the courtroom. The judge described Lantz's behavior on the record as "discourteous, disrespect-

ful, unprofessional, [and] oppositional," and said that she had interfered "with the effective and efficient administration of justice." Lantz in turn has alleged that the judge "intentionally and actively attempt[ed] to interfere" with the attorney-client relationship between Lantz and her client Gregory Camburn. The working relationship between the judge and attorney Lantz appears, in short, to have devolved into a shouting match, first in the courtroom and now in this court.

{¶ 10} The unfortunate series of heated courtroom discussions described by the judge and affiants on both sides now poses an impediment to the judge's ability to resolve any remaining legal and factual issues in a way that will appear to the parties and the public to be objective and fair. "It is of vital importance that the litigant should believe that he will have a fair trial," *State ex rel. Turner v. Marshall* (1931), 123 Ohio St. 586, 587, 176 N.E. 454, and in this case, it seems fair to say that attorney Lantz and her client no longer hold that belief. An objective observer who has read the transcripts provided to me and the judge's and Lantz's characterizations of their courtroom discussions might reasonably question whether either of them can now set aside her seemingly fixed views of the other.

{¶ 11} In recognition of the unique standards of professionalism required of judges, this court adopted a "Judicial Creed" in 2001 on the recommendation of the Supreme Court Commission on Professionalism. By doing so, the court sought to remind every judge of the high standards expected of them by the public they serve. Three provisions of that creed bear repeating here:

{¶ 12} "I know that I must not only be fair but also give the appearance of being fair.

{¶ 13} "I recognize that the dignity of my office requires the highest level of judicial demeanor.

{¶ 14} "I will treat all persons, including litigants, lawyers, witnesses, jurors, judicial colleagues, and court staff with dignity and courtesy and will insist that others do likewise." A Judicial Creed, Appendix V to the Ohio Rules for the Government of the Bar.

{¶ 15} I hope that Judge Squire and other Ohio judges will continue to work toward the aspirational standards described in the Judicial Creed. In the meantime, however, I conclude that Judge Squire must be disqualified from further proceedings in the two cases listed in the caption above because a reasonable and objective observer familiar with proceedings described in attorney Lantz's affidavit and the judge's response might reasonably question the judge's ability to preside fairly and impartially in these cases.

{¶ 16} Even so, I decline to order that Judge Squire be removed from all of attorney Lantz's pending cases. I remain hopeful that the two of them can move

beyond the lingering mutual suspicion that seems to have marked their professional relationship in recent months. Both of them would do well to recall the words of the Lawyer's Creed adopted by this court eight years ago:

{¶ 17} "To my colleagues in the practice of law, I offer concern for your reputation and well-being. I shall extend to you the same courtesy, respect, candor, and dignity that I expect to be extended to me.

{¶ 18} "* * * I recognize that my actions and demeanor reflect upon our system of justice and our profession, and I shall conduct myself accordingly." A Lawyer's Creed, Appendix V to the Ohio Rules for the Government of the Bar.

{¶ 19} The cases listed in the caption above are returned to the administrative judge of the Franklin County Court of Common Pleas, Domestic Relations Division, for reassignment.